## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAMIS ARIAS,** | : | **Civil No. 3:21-cv-0978** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **SUPERINTENDENT, SCI** | : | |
| **FAYETTE,** | : | |
| | : | |
| **Respondent.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The instant petition for writ of habeas corpus filed by the petitioner, Adamis Arias, was reassigned to the undersigned on November 2, 2023. On August 15, 2014, following a jury trial, Arias was convicted of third-degree murder in the February 23, 2013 shooting death of victim Angel Villalobos. At trial, the defendant asserted various theories of defense including that he shot the victim in self-defense and that the bullet that killed Villalobos could have ricocheted from his own gun. Nonetheless, there was also evidence, including Arias' own testimony and other testimony, that he shot at the victim. And while Arias testified that the victim shot first, another witness testified that Arias was the aggressor. Thus, as in many cases, the jury was charged with deciding which version of events they believed and

1

whether the Commonwealth of Pennsylvania had met its burden of providing Arias' guilt beyond a reasonable doubt, including whether the Commonwealth had met its burden of disproving that Arias acted in self-defense.

Indeed, the jury found the Commonwealth had met this burden and found Arias guilty to third-degree murder and the trial court sentenced him to a term of twenty to forty years in prison. Arias now invites us to set aside this verdict asserting that his trial counsel was ineffective and that he was deprived of his right to due process at trial. Mainly, Arias challenges the jury instructions from his trial, alleging that his trial counsel was ineffective for requesting only the "pattern" jury instructions which failed to address various nuances of his case and overall were insufficient. Some of these claims were raised in the Pennsylvania state court, which found them to be meritless or not fully developed.

After our own independent review of the record, we find that Arias' claims are unexhausted, procedurally defaulted, or without merit. Accordingly, for the reasons set forth below, this petition will be denied.

## II.    <u>Statement of Facts and of the Case</u>

The factual background of the instant petition, as presented at trial and summarized in the parties' briefs, can be stated as follows:[1] On February 23, 2013,

_____

[1] The only summary of the case provided by the Pennsylvania Superior Court in denying Arias' direct appeal focuses on the testimony of Rafael Santana Nunez and

a witness, Ray Martinez, was at home watching television when he heard five or six gun shots in front of his house. He looked out the window and saw a man lying on the ground and called 911. Hazleton Police Department arrived at the scene and found a Hispanic male, later identified as Angel Villalobos, lying on the ground surrounded by a group of people and a number of shell casings. The victim had sustained two gunshot wounds – one in the back and a fatal shot that entered his left groin in the front and severed his left iliac artery. Villalobos was transported by ambulance to Hazleton General Hospital but died as a result of his injuries.

The victim's sister identified Arias as a potential suspect because she believed he and the victim were having problems. Narcotics unit officers set up surveillance based upon a ping from what was believed to be Arias' cell phone and, on February 25, 2013, arrested him at his aunt's house after he attempted to flee. Sgt. David Bunchalk, who interviewed Arias after his arrest, testified that Arias admitted to being on West Maple Street the night the victim was killed, that shots were fired, and that he was "screwed because he was going to jail for life, and it was all over Facebook that he had shot" the victim. Arias was charged with Criminal Homicide.

---

Dr. Gary Ross, the only two issues raised by Arias on direct appeal. Since more factual development is needed to assess this petition, the factual background of this Memorandum is taken from the party briefs including the petitioner's memorandum, the respondent's response to the petition, and the petitioner's traverse. (Docs. 1, 8, 11).

## 1. *The Trial Testimony*

Several witnesses testified at trial including Arias' girlfriend, Allyssa Guzman. Guzman testified that Arias picked her up around six or seven in the evening and drove to the area of Maple Street in Hazleton, where the incident occurred. She heard screaming, yelling, and shooting and then Arias returned to the car, and they drove to New York. Arias was talking on the phone throughout the ride in Spanish, which Guzman does not speak fluently. Guzman noticed shell casings in Arias' hand. They stayed in New York for a couple hours before driving back to Hazleton and staying in an abandoned house. When Guzman learned on Facebook that the victim had been shot, she asked Arias if he shot at the victim, and he shrugged. After staying in the abandoned house one night, they went to Arias' aunt's house where he was later arrested.

Another witness, a friend of the victim, Julio Quintana, testified that he saw Arias on Maple Street the night of the shooting but had never seen him in the neighborhood before. He heard someone ask, "Where's my money?" and then he saw a gun. He pushed the victim out of the way and ran down the alleyway then heard multiple gunshots and returned to find the victim on the ground and another victim, Rafael Santana-Nunez, holding his rear.

4

The other victim of the shooting, Rafael Santana-Nunez, also testified at trial, forming one of the bases of the petitioner's initial appeal. Initially, the trial court determined that Santana-Nunez was unavailable as a witness and allowed the preliminary hearing testimony to be read to the jury. The next day, however, Santana-Nunez appeared in court to testify. As the Superior Court summarized:

> At trial, Commonwealth witness Rafael Santana Nunez testified that on February 23, 2013, he observed Arias, who was waiving [sic] a firearm, confront the victim on West Maple Street and ask where his money was. See N.T., Trial, 8/12/14 at 545-46. Nunez testified that he then heard Arias fire his firearm at the victim, who was shot in the back. See id. at 547-48. Nunez later identified Arias as the shooter from a police lineup. See id. at 549.

(Doc. 8-1, at 308-9). Santana-Nunez was also wounded by a shot fired from the victim, Villalobos, but testified that Arias shot first. Witness Robert Nunez also heard someone, not the victim, say, "Where's my money at?"

Two experts testified that at least one of the bullets taken from the victim's body could have been a ricochet due to some damage on the bullet, but one expert testified that bone could cause mutilation, and both testified that no trace evidence other than biological material was on the bullet. One expert testified that the bullets found in the victim's body and the shell casings found nearby were fired from different weapons and that the shell casing were fired from an automatic weapon and both the bullets taken from the victim's body were fired from the same gun, possibly a revolver.

Another expert, Dr. Gary Ross, testified regarding the autopsy of the victim.

As the Superior Court summarized:

> Dr. Gary Ross, who conducted the autopsy on the victim, was qualified as an expert in the field of forensic pathology. Dr. Ross testified that the victim sustained two gunshot wounds. Dr. Ross opined that the first bullet entered the victim's back near his lower spine, and would have caused the victim to fall to the ground. See id. at 493. Over defense objection, Dr. Ross testified that the second bullet, which entered near the victim's pelvis, as fired while the victim was lying on his back. See id. at 497-98; 501-02.

(Doc. 8-1, at 308-9).

Arias also testified in his own defense, stating that he arrived on Maple Street to buy marijuana. He testified that it was Villalobos who confronted him stating "what's this shit you're talking about that I owe you money?" to which he stated, "yeah, where is that money you owe me?" Arias testified that Villalobos pulled a .380 automatic, pointed it toward his penis and pulled the trigger but the gun misfired and then jammed when he tried to fire again. Then Villalobos shot Santana-Nunez while he was running away, and Arias pulled out his revolver and started shooting and saw Villalobos fall. Arias testified that Villalobos kept shooting even after he fell on his back.

## 2. *The Jury Instructions*

6

The bulk of the petitioner's arguments center around the instructions provided to the jury at trial. On this score, the trial court instructed the jury on how it should consider Arias' testimony:[2]

> The defendant took the stand as a witness in this case. In considering the defendant's testimony, you're to follow the general instructions I gave you for judging the credibility of any witness. You should not disbelieve the defendant's testimony merely because he is the defendant. **In weighing his testimony, however, you may consider the fact that he has a vital interest in the outcome of this trial. You may take the defendant's interest into account along with all other facts and circumstances bearing on credibility in deciding what weight his testimony deserves.**

(Doc. 8-1, at 210) (emphasis added).

The trial court also provided instructions on how to consider the petitioner's claim of self-defense:

> The defendant in this case has raised the issue of whether he acted in self-defense when he discharged his firearm. Self-defense is called justification in the law of Pennsylvania. If the defendant's actions were justified, you cannot find him guilty beyond a reasonable doubt. The issue having been raised, it is the commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. If the Commonwealth proves to you beyond a reasonable doubt that the defendant used deadly force, then to prove that such force was not justifiable in this case it must prove one of the following elements beyond a reasonable doubt: Firstly, that the defendant did not reasonably believe that he was in immediate danger of death or serious bodily injury from Angel Villalobos at the time he used the force and that therefore his belief that it was necessary for him to use deadly force to protect himself was unreasonable. Put another way, the Commonwealth must prove either that the defendant did not actually

---

[2] The petitioner refers to this instruction throughout as the "vital interest" instruction.

believe he was in danger of death or serious bodily injury such that he needed to use deadly force to defend himself at that moment or that while the defendant actually believed he needed to use such force his belief was unreasonable in light of all the circumstances known to him.

Keep this in mind. A person is justified in using deadly force against another not only when they are in actual danger of unlawful attack but also when they mistakenly but reasonably believe that they are. A person is entitled to estimate the necessity for the force he or she employs under the circumstances as he or she reasonably believes them to be at the time. In the heat of conflict, a person who has been attacked ordinarily has neither time nor composure to evaluate carefully the danger and make nice judgements about exactly how much force is needed to protect himself. Consider the realities of the situation faced by the defendant here when you assess whether the Commonwealth has proved beyond a reasonable doubt either that he did not believe he was actually in danger of death or serious bodily injury to the extent that he needed to use such force in self- defense or that while he did believe that his belief was unreasonable, or the Commonwealth must prove beyond a reasonable doubt that in the same encounter with Angel Villalobos the defendant engaged in conduct that demonstrated his intent to cause death or serious bodily injury and by that conduct he provoked the use of force against him. The conduct by the defendant must be of such nature that it shows it was his conscious object to cause death or serious bodily injury to the alleged victim, Angel Villalobos. Conduct that is not of such a nature does not constitute the kind of provocation upon which the Commonwealth may rely to prove its case.

If you find beyond a reasonable doubt that the Defendant's acts were of such a nature, you must then ask whether it provoked the similar use of force against him. In this assessment, the conduct by the defendant may be the initial provocation of the fight or it may be an act that continues or escalates it. However, even if the defendant was the initial aggressor or was the person who escalated the incident to one involving the use of deadly force, if he thereafter withdraws in good faith making it clear that his further intentions are peaceable and the alleged victim pursues him and renews the fight, he does not forfeit his right to claim justifiable self-defense. If, on the other hand, you find beyond a reasonable doubt that the defendant provoked the use of force against him by engaging

in conduct that showed that he intended to cause death or serious bodily injury to the alleged victim, you may find that his conduct was not justified. Or, third, the Commonwealth may establish beyond a reasonable doubt that the defendant knew that he could avoid the necessity of using deadly force with complete safety by retreating but that he failed to do so. If the Commonwealth proves one of these elements beyond a reasonable doubt, the actions of the defendant in using deadly force are not justified. If the Commonwealth fails to prove these elements, the defendant's action was justified and you must find him not guilty of the crime.

(Id., at 212-13).

Finally, with regard to the malice element required to convict the petitioner of third-degree murder, the trial court instructed the jury as follows:[3]

For murder of the third degree, a killing is with malice if the perpetrator's actions show his or her wanton and willful disregard of an unjustified and extremely high risk that his or her conduct would result in danger or serious bodily injury to another. In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The commonwealth must prove, however, that the perpetrator took action while consciously, that is, knowingly disregarded the most serious risk he or she was creating and that by his or her disregard of that risk the perpetrator demonstrated his or her extreme indifference to the value of human life.

On the other hand, a killing is without malice if the perpetrator acts with a lawful justification or excuse or under circumstances that reduce the killing to voluntary manslaughter.

When deciding whether the defendant acted with malice, you should consider all the evidence regarding his words, conduct, and the attending circumstances that may show his state of mind. **If you believe that the defendant intentionally used a deadly weapon on a vital part of Angel Villalobos's body, you may regard that as an of**

---

[3] The petitioner refers to this instruction throughout as the "infer malice" instruction.

**circumstantial evidence from which you may, if you choose, infer that the defendant acted with malice.**

(Id., at 215) (emphasis added).

### 3. *The PCRA Petition.*

Following the trial, a jury convicted Arias of third-degree murder and the trial court sentenced him to a term of twenty to forty years in prison. Arias filed a motion for reconsideration of sentence, which the trial court denied. Arias timely appealed his conviction to the Pennsylvania Superior Court, alleging that the trial court erred in allowing the Commonwealth to read into evidence the testimony of Rafael Santana-Nunez from the Preliminary Hearing despite not establishing that the witness was unavailable under Rule 804(a) and in allowing the testimony of Dr. Ross as to the location of the shooter at the time the second bullet was fired because that testimony was beyond the scope of his expertise as a physician. (Doc. 8-1, at 237-270). The court affirmed Arias' judgment of sentence on January 22, 2016. (Doc. 8-1, at 313). The Pennsylvania Supreme Court denied the petition for allowance of appeal on August 30, 2016. (Id., at 315).

Arias then filed a petition under Pennsylvania's Post-Conviction Relief Act (PCRA) on February 1, 2017. (Doc. 8-1, at 314-316). The PCRA petition alleged claims of ineffective assistance of trial counsel and argued that the conviction was obtained, and sentence imposed, in violation of the due process clause of the

Fourteenth Amendment. (Id., at 317-42). Specifically, the PCRA petition alleged ineffective assistance of counsel due to trial counsel's failure to object to and request various jury instructions including a failure to request a Rivera[4] instruction, failure to object to an instruction that the jury could infer malice from the use of a deadly weapon on a vital part of a the human body ("infer malice instruction"), and failure to object to a "vital interest" instruction that the jury could consider the fact that the defendant had a vital interest in the outcome of the trial in considering his testimony. Arias also argued in his PCRA petition that trial counsel failed to investigate and call witnesses.[5] The PCRA petition argued that trial counsel's failures, as a whole, denied Arias a fair trial under the Fourteenth Amendment.

A PCRA hearing was held on September 28, 2017, at which trial counsel testified. (Doc. 8-1, at 346-357). The PCRA court ultimately denied the petition. (Id., at 418-421, 428-442). Arias filed an appeal to the Superior Court which affirmed the decision of the trial court, denying Arias' relief. (Id., at 726-732). The Pennsylvania

---

[4] Commonwealth v. Rivera, 603 PA 340, 983 A2d 1211, 1221 (PA 2009).

[5] As the respondents point out, this issue was withdrawn at the PCRA hearing, but ultimately renewed following the hearing when Arias filed a supplement to the petition which included an affidavit from a purported potential witness, Jose Mejia, that trial counsel allegedly failed to discover. (Doc. 8-1, at 403-409). The PCRA court addressed this issue and the supplemental affidavit in its opinion denying the petition, although Arias did not raise the issue on appeal.

Supreme Court denied Arias' petition for Allowance of Appeal on August 3, 2020. (Id., at 791).

Thereafter, Arias filed the instant habeas corpus petition on June 1, 2021. (Doc. 1). His petition alleges violations of his Sixth and Fourteenth Amendment rights.[6] Broadly construed, and considering the claims and arguments together from both the petition and the memorandum, the petitioner alleges trial counsel were ineffective for inadequately investigating the case, and for a number of errors with regard to the jury instructions including not objecting to the "infer malice" instruction, not requesting a Rivera instruction, and for only requesting the "pattern" jury instructions. The petition also alleges that the trial court erred in allowing Dr. Ross to testify about the position of the shooter and that his due process rights were violated by the jury instructions. The memorandum also argues that the evidence was insufficient for a third-degree murder conviction. The petition is now fully briefed and is ripe for resolution. (Docs. 1, 8, 11).

After review of the petition and the underlying state court record, we find that Arias' claims have been thoroughly considered by the state courts and denied on their merits or are procedurally defaulted. Thus, given the deferential standard of review that applies to habeas petitions like Arias', we will deny his petition.

---

[6] The petition itself raises more grounds for relief than are argued in the memorandum accompanying the petition.

III.  **Discussion**

A. **State Prisoner Habeas Relief–The Legal Standard.**

(1) **Substantive Standards**

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State;
> ..........
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy rigorous substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct that violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir. 2004).

### (2) Deference Owed to State Courts

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its

merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts." <u>See</u> 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338–39 (2006); <u>see also</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 139–40 (3d Cir. 2006); <u>Gattis v. Snyder</u>, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. <u>See, e.g.</u>, <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. <u>Weeks v. Snyder</u>,

219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state

court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be
> overturned on factual grounds unless it was objectively unreasonable in
> light of the evidence presented in the state proceeding. <u>Miller–El v.
> Cockrell</u>, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We
> must presume that the state court's determination of factual issues was
> correct, and the petitioner bears the burden of rebutting this
> presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
> <u>Campbell v. Vaughn</u>, 209 F.3d 280, 285 (3d Cir.2000).

<u>Rico v. Leftridge–Byrd</u>, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of

review, federal courts may only grant habeas relief whenever "[o]ur reading of the

PCRA court records convinces us that the Superior Court made an unreasonable

finding of fact." <u>Rolan</u>, 445 F.3d at 681.

### (3) Ineffective Assistance of Counsel Claims

These general principles apply with particular force to habeas petitions that

are grounded in claims of ineffective assistance of counsel. It is undisputed that the

Sixth Amendment to the United States Constitution guarantees the right of every

criminal defendant to effective assistance of counsel. Under federal law, a collateral

attack of a sentence based upon a claim of ineffective assistance of counsel must

meet a two-part test established by the Supreme Court in order to survive.

Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner

must establish that: (1) the performance of counsel fell below an objective standard

of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the <u>Strickland</u> prongs in order to maintain a claim of ineffective counsel. <u>George v. Sively</u>, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, <u>Strickland</u> requires a petitioner to "establish first that counsel's performance was deficient." <u>Jermyn v. Horn</u>, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. <u>Id.</u> Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. <u>Id.</u> However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." <u>Id.</u> (quoting <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second <u>Strickland</u> prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." <u>Id.</u> This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d

18

Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted <u>Strickland</u> and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of <u>Strickland</u>. <u>Billinger v. Cameron</u>, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." <u>Hackett v. Price</u>, 381 F.3d 281, 287 (3d Cir. 2004); <u>see also</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under <u>Strickland</u>. As the Supreme Court has observed a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). This doubly

deferential standard of review applies with particular force to strategic judgment like

those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply
> reasonableness under prevailing professional norms." Id., at 688, 104
> S. Ct. 2052. "Judicial scrutiny of counsel's performance must be highly
> deferential," and "a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance." Id., at 689, 104 S. Ct. 2052. "[S]trategic choices made after
> thorough investigation of law and facts relevant to plausible options are
> virtually unchallengeable." Id., at 690, 104 S. Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d

251 (2009). The deference which is owed to these strategic choices by trial counsel

is great.

> Therefore, in evaluating the first prong of the Strickland test, courts
> "must indulge a strong presumption that counsel's conduct falls within
> the wide range of reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action 'might be considered sound trial
> strategy.'" Id. The presumption can be rebutted by showing "that the
> conduct was not, in fact, part of a strategy or by showing that the
> strategy employed was unsound."

Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009) (quoting Thomas v. Varner, 428

F.3d 491, 499-500 (3d Cir. 2005)) (footnote omitted).

### (4) Procedural Benchmarks – Statute of Limitations

Furthermore, state prisoners seeking relief under Section 2254 must also

satisfy specific, and precise, procedural standards. Among these procedural

prerequisites is a requirement that petitioners timely file motions seeking habeas

corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute. Specifically, 28 U.S.C. § 2244(d) prescribes several forms of statutory tolling. First, with respect to tolling based upon a petitioner's direct appeal of his conviction: "The limitation

period shall run from the latest of- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The courts have construed this tolling provision in a forgiving fashion, and in a manner that enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. Thus, with respect to direct appeals, the statute of limitations is tolled during the period in which a petitioner could have sought discretionary appellate court review, by way of allocator or through a petition for writ of certiorari, even if no such petition is filed. Jimenez v. Quarterman, 555 U.S. 113, 119 (2009). After this period of time passes, however, by statute the judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A).

Section 2244(d)(2), in turn, prescribes a second period of statutory tolling requirements while state prisoners seek collateral review of these convictions in state court, and provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004). Moreover, in contrast to the direct appeal tolling provisions, this post-conviction petition tolling provision does not allow for an additional period of tolling for the petitioner who does not seek further discretionary appellate court review of his conviction and sentence. Miller v. Dragovich, 311 F.3d 574, 578 (3d Cir. 2002).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions, Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights' The petitioner

must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[ ] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (quoting Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (citations omitted)).

Applying this exacting standard, courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir. 2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. While courts apply exacting standards to equitable tolling claims, it is evident that complete abandonment of a petitioner by his counsel can constitute one of the extraordinary circumstances justifying such equitable tolling. In Holland v. Florida, 560 U.S. 631 (2010), the

Supreme Court of the United States held that equitable tolling applies to § 2244(d). Id., at 645. Further, the Court in Holland held that an attorney's actions or inactions, if egregious enough, can constitute an "extraordinary circumstance" that justifies equitable tolling of a habeas petition. Id., at 651-52; see also Ross v. Varano, 712 F.3d 784 (3d Cir. 2013) (upholding a district court's determination of equitable tolling based on attorney misconduct).

### (5) Procedural Benchmarks – Exhaustion and Procedural Default

### a. Exhaustion of State Remedies

State prisoners seeking relief under section 2254 must also satisfy specific, additional procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of

government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982).  Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions.  Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in obtaining state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court."  Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

Although this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his

federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional clams. Evans, 959 F.2d at 1230-33.  Similarly, a petitioner meets his obligation by fairly presenting a claim to state courts, even if the state courts decline to address that claim.  Dye v. Hofbauer, 546 U.S. 1 (2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

### b.  Procedural Default

A necessary corollary of this exhaustion requirement is the procedural default doctrine, which applies in habeas corpus cases.  Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim.  In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted . . . .

> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play.  A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule.  Federal courts may not consider the merits of a procedurally defaulted claim

unless the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural ground.'" Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (citations omitted). Similarly, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at … trial created the possibility of

28

> prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Likewise, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules.  Hubbard, 378 F.3d at 338.

Procedural bar claims typically arise in one of two factual contexts.  First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground.  In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).  For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed."  Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not

> the date the state court relied on it, <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir. 1996), because a petitioner is entitled to notice of how to present a claim in state court.

<u>Taylor v. Horn</u>, 504 F.3d 416, 427-28 (3d Cir. 2007) (citing <u>Ford</u>, 498 U.S. at 423-24).

In other instances, the procedural default arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. <u>See, e.g.</u>, <u>Johnson v. Pinchak</u>, 392 F.3d 551 (3d Cir. 2004) (procedural default where petitioner failed to timely pursue state claim); <u>Hull v. Freeman</u>, 991 F.2d 86 (3d Cir. 1993) (same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."

It is against these legal benchmarks that we assess Arias' petition.

**B. <u>This Petition Should Be Denied.</u>**

In his petition and accompanying memorandum the petitioner argues the evidence was insufficient to sustain the trial verdict, along with four separate errors

of his trial counsel which he claims amounted to ineffective assistance, as well as two due process claims alleging he was deprived of due process because the jury instructions were not tailored to the facts of the case and denied due process when the medical examiner to testify about the location of the shooter. Although the parties concede his petition was timely filed, all but three of his claims are either wholly unexhausted or procedurally defaulted and do not fall within any of the exceptions articulated by the petitioner. Moreover, each of his claims fails on the merits. Accordingly, given the deference that must be afforded to the state courts' findings, we conclude that this petition should be denied.

### 1. *Most of Arias' Claims are Unexhausted or Procedurally Defaulted.*

Federal courts typically require a full and complete round of appeals before a claim is deemed exhausted. See O'Sullivan, 526 U.S. at 844-45 (1999) (finding that a petitioner properly exhausts claims in state court "by invoking one complete round of the State's established appellate review process"); Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000) ("Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims"); Evans, 959 F.2d at 1230 ("A claim must be presented not only to the trial court but also the state's intermediate court as well as to its supreme court"); Blasi v. Atty. Gen. of Pa., 30 F.Supp.2d 481, 486 (M.D. Pa. 1998) ("The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable,

and to the state's supreme court"). On this score, Arias has raised several different iterations of substantive errors and constitutional violations at different stages in his appeals process, only a few of which have remained through the requisite proceedings to be considered exhausted by the state court. In fact, Arias' brief in support of his petition contained a different set of complaints than the habeas petition itself. Thus, throughout these proceedings there has been a kaleidoscopic quality to Arias' claims which shift, change, and transmogrify over time.

Nonetheless, we view the series of claims he presents in his most recent habeas brief liberally, not employing an exacting standard in ensuring his claims have been exhausted word-for-word, but rather viewing his claims holistically to determine whether the claims he brings in federal court are the "substantial equivalent" of those presented to the state courts. See Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). Even so, although the petitioner baldly denies that any of his issues have not been fairly presented to the court system, his response does not demonstrate that these claims have been exhausted but rather cites legal precedent which provides various avenues by which a procedural default may be excused without applying this law to the facts of this case.

At the outset, three of Arias' claims were reviewed by the state court but found to be waived. Since the state court did not address the merits of these arguments, the

respondent argues that the following three claims, though raised at the state court

level,[7] are procedurally defaulted: his due process claim for inadequate instructions,

and his ineffective assistance of counsel claims for not asking for a <u>Rivera</u> instruction

and for requesting "pattern" jury instructions. With regard to these arguments, the

Superior Court explained:

> We will consider Arias's second and third claims together. In his
> second claim, Arias alleges that his trial counsel rendered ineffective
> assistance by failing to request a jury instruction. <u>See</u> Brief for
> Appellant at 22-27. Arias argues that the jury should have been
> instructed that the Commonwealth could not sustain its burden of proof
> solely on the fact-finder's disbelief of Arias's testimony. <u>Id.</u>
>
> In his third claim, Arias alleges that trial counsel was ineffective by
> requesting "pattern jury instructions."2 <u>See id.</u> at 27-34. Arias argues
> that the facts of his case were too complicated for pattern jury
> instructions to adequately inform the jury of the law that applied to his
> case. <u>Id.</u>
>
> In both his second and third [ineffective assistance of counsel] claims,
> Arias fails to develop all three prongs of the ineffectiveness test. In his
> second claim, Arias provides discussion of why his claims have merit,
> but fails to develop the remaining two prongs of the ineffectiveness test.
> In his third claim, Arias cites to general legal authority regarding jury
> instructions, but fails to cite to any pertinent legal authority regarding
> his particular claim, or provide any discussion of why trial counsel's
> actions lacked any reasonable basis.  Because Arias failed to properly
> develop these issues for our review, they are waived.   <u>See</u>
> <u>Commonwealth v. Clayton</u>, 816 A.2d 217, 221 (Pa. 2002) (stating that
> an "appellant's failure to develop any argument at all concerning the

---

[7] The respondents also argue that at least two of these claims are not exhausted, but
since the Superior Court addressed each, we will address only the procedural default
argument.

second and third prongs of the ineffectiveness test … results in waiver of" the claim); see also <u>Martin, supra</u>.

In his fourth claim, Arias alleges that the trial court failed to give adequate jury instructions, in violation of his right to due process under the Fourteenth Amendment to the United States Constitution.  See Brief for Appellant at 34-37.  Arias argues that the jury instructions were not tailored to the facts of his case, and failed to accurately and sufficiently state the law regarding self-defense.  <u>Id</u>.

Here, Arias fails to provide pertinent argument as to why the jury instructions used in his case were deficient, and to reference relevant legal authority in support.  "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." <u>Commonwealth v. Johnson</u>, 985 A.2d 915, 924 (Pa. 2009).  It is not the role of this Court to "formulate [an a]ppellant's arguments for him."  <u>Id</u>. at 25.  Accordingly, Arias's fourth claim is waived.  <u>See id., supra</u>.

(Doc. 8-1, at 732-34). Thus, in reviewing these arguments in Arias' PCRA petition, the Pennsylvania Superior Court found that he had failed to develop his claims in a way that the court could meaningfully review.

On this score, the Third Circuit has held that claims deemed to be waived by the state court due to a failure to be meaningfully developed are procedurally defaulted. As the court of appeals explained:

A state procedural rule is "independent" if it is separate from the federal issue. Here, it is beyond dispute that the Superior Court's determination that Petitioner had waived his claims was pursuant to state law, and was separate from the federal issues before it. <u>See Cabrera v. Barbo</u>, 175 F.3d 307, 313 (3d Cir.1999) ("[T]he basis for the state court's rejection of the ineffective assistance of counsel claims was state court procedural default ... Clearly, this disposition was an independent state ground."). Moreover, a state procedural rule is adequate if it was

"firmly established and regularly followed" at the time of the alleged procedural default. <u>Ford v. Georgia</u>, 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). To be considered firmly established and regularly followed, "(1) the state procedural rule [must] speak[ ] in unmistakable terms; (2) all state appellate courts [must have] refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance [must be] consistent with other decisions." <u>Nara v. Frank</u>, 488 F.3d 187, 199 (3d Cir.2007). This test is met here.

The requirement that Petitioner must meaningfully develop his arguments on appeal and cite to appropriate authorities has been stated in unmistakable terms by the Pennsylvania Supreme Court, <u>see Commonwealth v. Clayton</u>, 572 Pa. 395, 816 A.2d 217, 221 (2002) ("[I]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal"), and is embodied in the state's rules of appellate procedure, <u>see</u> Pa. R.A.P. 2119(a). Moreover, the Superior Court refused to consider Petitioner's claims on the merits and its refusal is consistent with other decisions. <u>See Bracey</u>, 795 A.2d at 940 n. 4, <u>Clayton</u>, 816 A.2d at 221. We conclude that the Superior Court's decision was based upon an independent and adequate state law ground. <u>See Nara</u>, 488 F.3d at 199.

Moreover, " 'federal habeas corpus relief does not lie for errors of state law.' " <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). This remains true even if the state procedural ruling is incorrect. <u>Estelle</u>, 502 U.S. at 71–72, 112 S.Ct. 475; <u>see also Kontakis v. Beyer</u>, 19 F.3d 110, 117 n. 12 (3d Cir.1994) (reminding that "a state court's misapplication of its own law does not generally raise a constitutional claim.") (citation omitted). Thus, even if the Superior Court incorrectly deemed waived certain of Petitioner's ineffective assistance claims—a point Petitioner does not argue here— habeas relief would not be warranted, as it is "well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Taylor v. Horn</u>, 504 F.3d 416, 448 (3d Cir.2007); <u>see also id</u>. (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)) ("Even assuming the

35

state court failed to follow the law of Pennsylvania, in this federal habeas case, we are limited to deciding whether [the petitioner's] conviction and sentence 'violated the Constitution, laws, or treaties of the United States.' ").

Leake v. Dillman, 594 F. App'x 756, 758–59 (3d Cir. 2014). In this parallel factual scenario, where the Pennsylvania Superior Court found Arias failed to develop these three claims for meaningful review, this Third Circuit precedent clearly bars Arias from seeking habeas relief on these three procedurally defaulted claims.[8]

As to his claim that the evidence was insufficient for a conviction, this claim is clearly unexhausted since it was never raised in any state court. The respondent argues that trial counsel was ineffective for not raising this claim on direct appeal, but this does not explain the failure of counsel to raise this issue in the PCRA petition. To the extent that the petitioner argues the ineffectiveness of PCRA counsel to overcome the procedural default of his claims, we note that the same counsel represented Arias in his PCRA proceedings and the instant proceedings. Moreover, as a general rule, Section 2254 states that "[t]he ineffectiveness or incompetence of

---

[8] The respondents also argue that Arias' ineffective assistance of counsel claim due to inadequate investigation has not been exhausted since it was withdrawn at the PCRA hearing. (Doc. 8, at 13). Although the plaintiff's counsel did state at the PCRA hearing that she was withdrawing that claim, she later submitted a supplement to the PCRA petition and affidavit renewing the issue. Its substance was addressed by the state court, but Arias did not fully exhaust his appeals on the issue. Nonetheless, since the state court did address this issue, and construing this petition liberally, we will address this issue on the merits.

counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Further, the Supreme Court has stated that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," and consequently "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987) and Wainwright v. Torna, 455 U.S. 586 (1982)); see also Holman v. Gillis, 58 F. Supp. 2d 587, 597 (E.D. Pa. 1999) (stating that "a claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition because the right to effective assistance of PCRA counsel exists pursuant to state law, and is not mandated by the Constitution or laws or treaties of the United States").

The petitioner advances several arguments for why this Court should excuse these procedural defaults and review these claims. To the extent that Arias invokes Martinez to excuse these unexhausted and procedurally defaulted claims, the Supreme Court in Martinez held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Martinez, 566 U.S. at 17.

The Martinez exception is narrow in that it provides a petitioner with a method to establish "cause" for a procedural default on some legal claim. Id. It does not, however, allow a petitioner to rely on the ineffectiveness of post-conviction counsel as a ground for relief, as that is precluded by § 2254(i). Id. Thus, to the extent that the petitioner seeks relief on the ground that his PCRA counsel was ineffective, such relief should be denied.

To the extent the petitioner seeks to use PCRA counsel's alleged ineffectiveness as "cause" to excuse any procedural default of his unexhausted constitutional claims, under Martinez, the failure to raise a claim in a PCRA petition is excused only if counsel rendered ineffective assistance in developing, or failing to develop, the claim. Martinez, 566 U.S. at 21-22. Additionally, the claim of ineffective assistance of trial counsel that was not raised must be a substantial one— that is, it must have some merit. Id. at 14. This is a very high standard, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 690 (1984)).

Here, the petitioner's reliance on Martinez to excuse his procedural defaults fails. In fact, this argument is almost entirely undeveloped. Arias provides no factual support for this argument beyond simply invoking Martinez as a doctrine which

could excuse a procedurally defaulted or unexhausted claim. And, more importantly, as discussed below, his unexhausted and procedurally defaulted claims are meritless and, therefore, not substantial.

Nor can these claims be saved by Arias' assertion of actual innocence, an even narrower exception to the procedural bars which constrain this Court from reviewing many of his claims. The Supreme Court has explained that "[a]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). However, this exception is also quite narrow. Id. ("We caution, however, that tenable actual-innocence gateway pleas are rare[.]").

In McQuiggin the Supreme Court relied on its prior decision in Schlup v. Delo, 513 U.S. 298 (1995), where the Court held that "a petitioner does not meet the threshold requirement [of showing actual innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329; see also McQuiggin, 569 U.S. at 386; House v. Bell, 547 U.S. 518, 538 (2006) (emphasizing that the Schlup standard is "demanding" and rarely satisfied). The timing of the petition is also a relevant factor that bears on the reliability of the evidence that a petitioner offers to demonstrate actual innocence. McQuiggin, 133 S. Ct. at 1928.

"To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Stated somewhat differently, the petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." Id. at 316. But where the new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that trial was untainted by constitutional error," then the new evidence meets the "threshold showing of innocence [to] justify a review of the merits of the constitutional claims." Id. at 317.

In analyzing a petitioner's actual-innocence claim based on new evidence, "the habeas court must consider 'all the evidence,' old and new, incriminating, and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" House, 547 U.S. at 537-38. Accordingly, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." Id. At the same time, "it bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case." Id. at 538. A court is not compelled to hold an evidentiary hearing where, after "assess[ing] the probative force of the newly presented evidence in connection with

40

the evidence of guilt adduced at trial," the court finds that no reasonable juror would

have acquitted the petitioner in the light of the new evidence presented. Schlup, 513

U.S. at 331-32; Houck v. Stickman, 625 F.3d 88, 95 (3d Cir. 2010).

In a case out of the Eastern District of Pennsylvania that involved a similar

analysis to that required in this case, Judge Slomsky summarized the court's

evaluation of the sufficiency of a petitioner's showing under Schlup as follows:

> In order to determine whether a habeas petitioner's claim of actual
> innocence may act as a procedural gateway under Schlup, a federal
> court must consider the following: "[1] whether [the petitioner] has
> presented 'new reliable evidence ... [that was] not presented at trial,'
> and, if so, [2] whether it is more likely than not that no reasonable juror
> would have convicted him in light of the new evidence." Hubbard v.
> Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). For purposes of satisfying
> the first inquiry, "evidence is only new if it was not available at trial
> and could not have been discovered earlier through the exercise of due
> diligence." Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010)
> (quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997)).
> See also Hubbard, 378 F.3d at 340 ("A defendant's own late-proffered
> testimony is not 'new' because it was available at trial. [The defendant]
> merely chose not to present it to the jury. That choice does not open the
> gateway."). Once the court determines that a habeas petitioner has
> presented new reliable evidence, the court must then "assess the likely
> impact of [that] evidence on reasonable jurors." House, 547 U.S. at 538.

Pirela v. District Attorney of Phila., Civ. A. No. 00-5331, 2014 U.S. Dist. LEXIS

67947, *18-19, 2014 WL 2011536, *6 (E.D. Pa. May 16, 2014). Thus, a court must

first determine that a petitioner has actually presented new evidence that meets this

standard before the court considers its likely impact on a jury.

In this case, Arias has not presented newly discovered evidence that could meet the rigorous standard of <u>Schlup</u> and the Supreme Court and Third Circuit's jurisprudence governing gateway claims of actual innocence. In fact, Arias has not presented any new evidence at all; his reply brief properly instructs us on the law of actual innocence but stops short of applying this law to any facts of this case. Even incorporating the factual averments from the entirety of his petition and supporting briefs, Arias has merely reiterated the facts presented at trial that he argues would not have permitted any reasonable juror to vote to convict him. This falls well short of what is required to get past the gateway, and to excuse the procedural defaults of many of these claims.

### 2. *Arias' Sufficiency of the Evidence Claim Fails.*

Not only do we find many of Arias' claims wholly unexhausted, but his claims also fail as a matter of substance. At the outset, Arias faces an exacting burden of proof in advancing a claim that the evidence was insufficient to sustain the verdict of third-degree murder. As we have observed:

> In <u>Jackson v. Virginia</u>, the United States Supreme Court held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . Moreover, the rule announced in <u>Jackson</u> "requires a reviewing court to review the evidence 'in the light most favorable to the prosecution.' " <u>Id.</u> (quoting <u>Jackson</u>, 443 U.S. at 319, 99 S.Ct. 2781). What this means is that a

reviewing court "faced with a record of historical facts that supports
conflicting inferences must presume – even if it does not affirmatively
appear in the record – that the trier of fact resolved any such conflicts
in favor of the prosecution, and must defer to that resolution." Id., at
133, 130 S.Ct. 665 (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

Hawk v. Overmyer, No. 3:16-CV-135, 2019 WL 1187356, at *5 (M.D. Pa. Jan. 17,

2019), report and recommendation adopted sub nom. Hawk v. Overmeyer, No. 3:16-

CV-135, 2019 WL 1163830 (M.D. Pa. Mar. 13, 2019). Judged by this deferential

standard, we conclude, that there was ample evidence to convict Arias. Indeed, Arias

himself testified that he fired shots from his revolver at the victim and an expert

testified that the bullets found in Villalobos' body, including the bullet which

severed his iliac artery, killing him, were fired from the same gun, possibly a

revolver. (Doc. 8-1, at 118, 121). Moreover, to the extent that he argues the

Commonwealth failed to disprove his claim of self-defense, at least one witness

testified that Arias shot first and no witness corroborated the testimony of Arias that

Villalobos was the aggressor. Furthermore, Arias' admissions at the time of his arrest

and statements at the time of the killing notably lack any timely claim of self-

defense. Instead, these contemporaneous statements suggest a shooting of the victim

by Arias over a drug debt. Further, and significantly, Dr. Ross' testimony that

Villalobos was first shot in the back before Arias administered the fatal wound to

his groin is inconsistent with a claim of self-defense since the first wound to

Villalobos' back suggests that the victim has turned away from Arias when he was

shot. A jury was justified in concluding that the victim presented no immediate threat to Arias if he had turned away from his slayer. Simply put, while Arias may not wish it to be so, this body of evidence and the witness who testified he shot first was believed by the jury that convicted him. It was the right and province of the jury to make this credibility determination and Arias may not now ask us to set aside this factual finding.

### 3. Arias' Ineffective Assistance of Counsel Claims are Without Merit.

The bulk of Arias' petition centers around alleged failures of trial counsel which he contends violated his right to counsel under the Sixth Amendment. Three of his four ineffective assistance of counsel claims relate to the jury instructions. However, in his petition, Arias also raises the additional ground that trial counsel was deficient for failing to investigate beyond a cursory review of the prosecutor's file. This claim is not explained in the supporting memorandum, but Arias cites the following supporting facts in his petition:

> Trial counsel would have discovered evidence that would have supported the justification defense. For example, if trial counsel had conducted an investigation, they would have discovered substantial evidence indicating the bullets that killed the "victim" were fired from the victim's own gun. They would have discovered witnesses who actually saw the shooting, and would have been able to rebut the witnesses who heard the shooting. They would have discovered the victim's criminal record, and would have been able to establish that the petitioner was afraid of the victim, and had good reason to be afraid of him.

(Doc. 1, at 5).

At the outset, we struggle to find this claim, which was raised in the PCRA petition, then withdrawn at the PCRA hearing, then raised again as a supplement to the PCRA petition, then seemingly withdrawn again on PCRA appeal, has been fully exhausted. Moreover, this issue, while worded similarly at each stage where it was raised, has born different factual iterations throughout the process. For example, the PCRA petition relied on the affidavit of Katherine Zapata, who Arias argued was ready, willing, and able to testify that he was being threatened by the victim. (Doc. 8-1, at 339). After withdrawing the issue at the PCRA hearing, Arias then submitted a supplement with the declaration of Jose Majia, stating that he saw the victim pull out a gun and start firing shots wildly and also saw Arias start shooting at the victim. (Doc. 8-1, at 407).

The petitioner now seemingly incorporates these newly discovered witnesses and their testimony into the instant petition. But, although not raised on appeal, the PCRA court addressed this claim on the merits, stating:

> In the first error complained of, it is alleged trial counsel was ineffective for failing to conduct a pretrial investigation, without more. However, notwithstanding the affidavit attached to the original PCRA application, Petitioner failed to develop a record supporting the allegation - likely due to the fact that the alleged witness failed to appear. Additionally, PCRA counsel failed to secure and/or serve court process to compel the attendance of the witness at the date and time of the scheduled hearing. Apparently, Petitioner now believes he is entitled to a second hearing with respect to the Supplement based upon

yet another witness "Declaration", notwithstanding the fact that the Declaration clearly and unequivocally demonstrates the alleged witness secreted himself from the authorities, the Defendant, and trial counsel "...because [he] did not want to get involved". See, Paragraph No. 5 of the Declaration to Supplement.

As stated, Petitioner bears the burden of pleading and proving by a preponderance of the evidence a basis for the requested relief. PCRA counsel failed to state how the witness identified in the Supplement to the PCRA application was discovered on or about May 21, 2018, more than a year after the original PCRA application was filed. Petitioner has failed to cite authority supporting the proposition that trial counsel has the obligation to discover a witness who has secreted himself from authorities, the Defendant and trial counsel after allegedly witnessing a crime. Notably, the several briefs PCRA counsel authored are devoid of authority supporting the IAC claim advanced. Moreover, the PCRA application lacks any averment as to how or why trial counsel knew, or should have known, of this alleged witness and the very Declaration relied upon demonstrates the unavailability of the alleged witness "...because (he] did not want to get involved". Petitioner's bold statement that the "witness" identified in the Supplement to the PCRA application "...is just one ramification flowing from the failure to conduct the reasonable pretrial investigation required by law" is somewhat disingenuous when viewed in context of the Declaration submitted.

PCRA counsel has cited Commonwealth v. Baxter, 640 A.2d 1271 (Pa. 1994) in support of this claimed error. In Baxter, counsel was found to be ineffective for failing to investigate the background of the primary prosecution witness. The witness in Baxter was known to trial counsel and testified at trial that, in the course of a conversation he had with the defendant at his home, the defendant confessed to the murder in question. However, at the time of the alleged confession, the witness was actually incarcerated and the witness presented the only solid evidence linking the defendant to the crime. Baxter does not support Petitioner's allegation of error here.

The applicable law provides that "To prevail on a claim that trial counsel was ineffective for failing to present a witness, the defendant

must demonstrate (in addition to the existence of the witness and counsel's awareness of that witness) that the witness was willing and able to cooperate on behalf of the defendant; and that the proposed testimony was necessary to avoid prejudice to the defendant." Commonwealth v. Mason, 130 A.3d 601, 634-35 (Pa. 2015); Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007). Here, the alleged witness' Declaration demonstrates he was not known to the authorities who investigated the crime nor to trial counsel because he elected to secrete himself. Petitioner has failed to plead or prove any reasonable means by which trial counsel could have discovered that this witness existed at or before the time of trial. More importantly, the witness was not willing to cooperate at the time of trial, by his own admission. And unlike the circumstance in Baxter, there is no dispute here that Defendant shot and killed the victim.

We find in this instance that the alleged witness, identified for the first time in the procedurally defective Supplement, was simply unknown to trial counsel and was-- given the assertion in the Declaration that he did not want to be involved and secreted himself from the authorities, Defendant and trial counsel- therefore unavailable. Further, we note that this alleged witness was also apparently unknown and unavailable to PCRA counsel for more than a year after her entry of appearance-- despite a presumably thorough investigation by PCRA counsel.

In addition to the pleading and proof deficiencies set forth above, we find the Supplement unverified by the Defendant and that it fails to contain certifications from the alleged witness indicating availability and willingness to cooperate with the defense, even at this point in time. See, Commonwealth v. Khalil, 806 A.2d 415, 422 (Pa. Super.2002); 42 Pa. C.S.A. § 9545. Therefore, a hearing would add nothing to change our determination. See, Commonwealth v. Hill, 2019 PA Super 12 (Jan. 11, 2019).

In conclusion, we also note the trial record reflects trial counsel elicited testimony from Commonwealth witness Rafael Santana -Nunez that he was shot by the victim negating the allegation that trial counsel's further investigation would have disclosed the victim was predisposed to carry and use a firearm. See, N.T. Jury Trial, 8/14/14 at 551. Accordingly,

we find Defendant's first error alleged to be without arguable merit. *See*, <u>Commonwealth v. Giknis</u>, 420 A.2d 419 (Pa. 1980).

Without the benefit of the petitioner's briefing on this issue, and mindful of the fact that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous, 28 U.S.C. § 2254(e)(1), we see no error here. In fact, the petitioner's procedural defects and failure to develop the record as to this issue extend to the instant petition, where he has provided no explanation or factual support for this claim beyond reference to unnamed witnesses that he argues may have been available to exonerate him at trial, despite the state court's finding that any subsequently named witnesses were not available or were unknown to trial counsel. Moreover, any claim that, had trial counsel conducted an adequate investigation, they would have discovered substantial evidence indicating the bullets that killed the victim were fired from the victim's own gun is not only devoid of any specific evidentiary support that such evidence exists, but is belied by the testimony of firearms expert Corporal Joseph Gober stating that both bullets found in the victim were fired from the same gun, possibly a revolver, and were different from the other casings found on the scene which likely came from Villalobos' weapon. (Doc. 8-1, at 118-120). Thus, we find this uncertain, vague, unsupported, and unexhausted claim fails.

Arias' claims of ineffective assistance of counsel regarding the jury instructions fair no better. He argues that trial counsel was ineffective for requesting "pattern" instructions, for failing to request a <u>Rivera</u> instruction regarding the Commonwealth's burden to disprove self-defense beyond a reasonable doubt, and for failing to object to the "infer malice" instruction that the jury could consider the use of a deadly weapon on a vital part of the body to infer malice where there was no evidence that the petitioner fired the deadly shot.

As previously discussed, we employ a doubly deferential standard in examining habeas petitions raising ineffective assistance of counsel, showing deference to the decisions of state courts unless they are either "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. § 2254(d)(l); or "based upon an unreasonable determination of the facts." <u>See</u> 28 U.S.C. § 2254(d)(2), and in assessing whether counsel's performance was constitutionally deficient, "[t]here is a 'strong presumption' that counsel's performance was reasonable." <u>Id.</u> (quoting <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996)). Here, this doubly deferential standard works against the petitioner, where the state court found these claims meritless or undeveloped and trial counsel testified that their decisions were "strategic choices made after thorough investigation of law and facts." <u>Knowles</u>, 556 U.S. 111 at 129.

Turning first to the only ineffective assistance of counsel claim the parties concede is properly exhausted, that trial counsel was ineffective for failing to object to the "infer malice" instruction that the jury could consider the use of a deadly weapon on a vital part of the body to infer malice when there was no evidence that the petitioner fired the fatal shot, the Pennsylvania Superior Court found:

> Here, the trial court instructed the jury that "[i]f you believe that [Arias] intentionally used a deadly weapon on a vital part of the victim's body, you **may** regard that as an item of circumstantial evidence from which you **may, if you choose**, infer that the defendant had the specific intent to kill." *See* N.T., 8/12-14/2014, at 818-19 (emphasis added). The jury instruction allowed the jury to find malice if it found that a deadly weapon was used on a vital part of the victim's body, but did not require that finding. This instruction mirrors the standard Pennsylvania deadly weapon jury instruction, see Pa.SSJI (Crim) 15.2502A, and has been upheld by our Supreme Court. See Commonwealth v. O'Searo, 352 A.2d 30, 37-38 (Pa. 1976) (upholding a deadly weapon jury instruction that "permits the jury to find intent [to kill] from the use of a deadly weapon[,]" but does not require it). Therefore, the jury instruction was not improper.
>
> Additionally, the evidence established that Arias shot the victim twice in the torso; one bullet entered the victim's back and lodged in his spine; the second bullet entered the victim's abdomen and lodged in his stomach cavity. *See* N.T., 8/12-14/2014, at 491-96; see also id. at 175-76. Gary Ross, M.D., a forensic pathologist, testified at trial that the gunshot wound to the victim's abdomen "was unquestionably lethal, and [the victim] died directly as a result of this gunshot wound." Id. at 499. Therefore, the evidence established that Arias used a deadly weapon on a vital part of the victim's body. See Commonwealth v. Sepulveda, 855 A.2d 783, 789 (Pa. 2004) (stating that where the defendant was shot in the abdomen, he was shot in a vital part of his body); Commonwealth v. Drumheller, 808 A.2d 893, 908 (Pa. 2002) (holding that the torso may be considered a vital part of the body).

> Accordingly, because Arias's underlying claim lacks merit, his ineffectiveness claim fails.

(Doc. 8-1, at 731-32).

As to the petitioner's argument that the state court's decision is based upon an unreasonable determination of the facts because there was no evidence that Petitioner fired the bullet that killed the victim, indeed this view is a misrepresentation of the expert testimony that revealed both bullets that hit the victim were fired from the same weapon, possibly a revolver, the gun with which the petitioner concedes he was armed. And although experts testified that the fatal bullet showed evidence of damage that could have been attributed to a ricochet, they also testified that the damage could have been from hitting bone, and that only biological material was found on the bullet. (Doc. 8-1, at 120). Thus, although the petitioner does not wish it to be so, based upon this expert testimony the jury very well could have found that Arias fired the fatal shot upon a vital part of the victim's body, his torso. On these facts, it cannot be said that the state court's decision was based upon an unreasonable factual determination.

Nor can it be said that the state court's decision was contrary to or an unreasonable application of caselaw. As the Superior Court pointed out, this instruction mirrored the standard Pennsylvania deadly weapon jury instruction. Moreover, the Pennsylvania Supreme Court has upheld such a jury instruction

where, as here, the inference the jury was told it could make was permissible, not mandatory (e.g. "if you believe that [Arias] intentionally used a deadly weapon on a vital part of the victim's body . . . you may, if you choose, infer that the defendant had the specific intent to kill."). <u>See</u> <u>Commonwealth v. O'Searo</u>, 352 A.2d 30, 37-38 (Pa. 1976). Moreover, the petitioner's reliance upon the Court's holding in <u>Yates v. Evatt</u>, 500 U.S. 391 (1991) to support his argument that the state court misapplied the law is misplaced, since the instruction in <u>Yates</u> was a mandatory, albeit rebuttable, instruction. Unlike the mandatory "infer malice" instruction that the <u>Yates</u> court found constitutionally erroneous, the Court was careful to note that:

> A mandatory presumption, even though rebuttable, is different from a permissive presumption, which does not require . . . the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and . . . places no burden of any kind on the defendant. A permissive presumption merely allows an inference to be drawn and is constitutional so long as the inference would not be irrational.

<u>Yates v. Evatt</u>, 500 U.S. 391, 402, 111 S. Ct. 1884, 1892, 114 L. Ed. 2d 432 (1991), <u>disapproved of by</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (cleaned up). Indeed, the Supreme Court has held that:

> A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. . . . A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

Francis v. Franklin, 471 U.S. 307, 314–15, 105 S. Ct. 1965, 1971, 85 L. Ed. 2d 344
(1985), holding modified by Boyde v. California, 494 U.S. 370, 110 S. Ct. 1190, 108
L. Ed. 2d 316 (1990) (citing Ulster County Court v. Allen, 442 U.S. 140, 157–163
(1979); see also Romero v. Beard, No. CV 08-0528-KSM, 2024 WL 1975475, at
*53 (E.D. Pa. May 2, 2024) (applying Francis in deferring to state court's ruling on
permissive jury instruction). Having found that the state court's factual
determinations on this issue were not unreasonable and legal conclusions supported
by both state and federal law, we defer to the state court's ruling that this ineffective
assistance of counsel claim fails.

As to the remaining two ineffective assistance of counsel claims, as previously
discussed, the state court found that Arias had not fully developed, and therefore
waived, these claims, making them procedurally defaulted and barred from habeas
relief. But, even setting aside these procedural defaults, Arias' claims fail under our
independent application of Strickland. Arias argues that trial counsel's request for
pattern instructions was deficient and prejudicial, and that trial counsel was
ineffective for failing to request a Rivera instruction regarding the Commonwealth's
burden of disproving a defense beyond a reasonable doubt once it has been raised
by the defendant. Specifically, the instruction the petitioner argues trial counsel was
ineffective for not requesting states:

> When the defendant introduces evidence of self-defense, the
> Commonwealth bears the burden of disproving such a defense beyond
> a reasonable doubt. The Commonwealth cannot sustain its burden of
> proof solely on the factfinder's disbelief of the defendant's testimony.
> The disbelief of a denial does not, taken alone, afford affirmative proof
> that the denied fact existed so as to satisfy a proponent's burden of
> proving that fact.

Com. v. Rivera, 603 Pa. 340, 355–56, 983 A.2d 1211, 1221 (2009) (quoting Com.
v. Torres, 564 Pa. 219, 766 A.2d 342, 345 (2001)) (internal quotations omitted).

It is undisputed that the jury instructions stated that the Commonwealth bore
the burden of disproving self-defense beyond a reasonable doubt. But the petitioner
argues that trial counsel was constitutionally ineffective for failing to object to
instructions which did not convey to the jury in clear and unmistakable language that
the prosecution's burden of disproving self-defense beyond a reasonable doubt could
not be based solely on its disbelief of the petitioner's testimony. In the petitioner's
view, his guilt or innocence hinged solely on his credibility, since the witness who
testified he shot first only heard the altercation but did not see it and the prosecution
used his credibility against him in its closing argument, and thus it was imperative
that the jury be given this specific instruction. For this reason, the petitioner argues
the use of the standard "pattern" instructions in this case was insufficient and
confusing to the jury and resulted in prejudice.

As previously noted, to prevail on a claim of ineffective assistance of counsel,
a petitioner must establish that: (1) the performance of counsel fell below an

objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)). On this score, we presume trial counsel's actions were part of a sound trial strategy, unless the petitioner can disprove this fact or show that such strategy was unsound.

Moreover, with respect to these legal issues relating to counsel's performance as it pertains to jury instructions, "on federal habeas review, the relevant question is 'whether the [challenged] instruction by itself so infected the entire trial that the resulting conviction violated due process . . ., not merely whether the instruction is undesirable, erroneous, or even universally condemned." Martin v. Warden, Huntingdon State Correctional Inst., 653 F.2d 799, 809 (3d Cir.1981) (alteration in original) (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d

203 (1977) and <u>Cupp v. Naughten</u>, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Furthermore, "a single instruction to the jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." <u>Id.</u> If an instruction is found wanting, then a second showing must be made; that is, the failure to object to that instruction by counsel must be highly prejudicial to warrant habeas relief. Therefore, "[t]o the extent that [a habeas corpus] claim is based on counsel's failure to object [to a jury instruction, that claim fails when the petitioner] cannot show a reasonable probability that the outcome of the proceeding would have been different if counsel had objected." <u>Id.</u> at 113–114.

Arias' claims of ineffective assistance of counsel based on these correct, but perhaps incomplete, jury instructions stumble at both stages of our inquiry. As to whether the use of the pattern instructions and failure to include a <u>Rivera</u> instruction fell below the objective standard of reasonableness, at the PCRA hearing, trial counsel testified that the requested jury charge was standard and adequate and that no objections were made because they believed the standard instructions regarding self-defense and were appropriate for the case. (Doc. 8-1, 346-56). Despite the petitioner's dissatisfaction with the specificity of the instructions, he does not argue that the instructions were erroneous; indeed all agree these jury instructions were standard. And, beyond the outcome of the trial being in his disfavor, he fails to demonstrate how trial counsel's clear belief that these instructions were adequate as

56

part of their trial strategy fell below the objective standard of reasonableness under prevailing professional norms.

But, most importantly, all of Arias' ineffective assistance of counsel claims fail on the second Strickland prong because, despite his arguments that there was no evidence that he was the aggressor, there was ample circumstantial evidence in the record from which the jury could conclude that the Commonwealth met its burden beyond a reasonable doubt. Arias' argument that a single sentence instructing the jury on his credibility would have changed the outcome of his trial might have greater weight if the sole evidence relating to self-defense came exclusively from his own testimony as he argues.

However, there was another witness, Rafael Santana-Nunez, who testified that Arias shot first. Further, other evidence indicated that Arias was the first aggressor in that he initiated the confrontation with Villalobos over a drug debt. Finally, the forensic testimony of Dr. Ross thoroughly undermines any claim of self-defense since Dr. Ross opined first that Arias shot the victim in his back. Arias cannot credibly claim that a man who had turned his back on the petitioner presented an immediate threat. Further, once Arias' first shot in Villalobos' back left him prone, the evidence indicates that Arias inflicted a second fatal wound to his victim as he lay on the ground. This calculated conduct is also inconsistent with a claim of self-defense.

In this setting, we cannot make the finding that there is a reasonable likelihood that the failure to give the additional instruction would have led to a different outcome, where the Commonwealth has met the burden of providing some other evidence, albeit the evidence of a witness who did not directly observe the shooting, but heard it, and, despite inconsistent accounts, ultimately testified at trial that the first shot was fired by Arias. Although this evidence is imperfect, it is significant additional evidence, beyond its disbelief of the petitioner's testimony, on which the jury's verdict could rest. Therefore, Arias has not carried his exacting burden of showing both a failure of defense counsel and prejudice. Accordingly, even if these claims were not procedurally barred, they fail on their merits.

### 4. *Arias' Due Process Claims Fail.*

The petitioner's challenge of the jury instructions fails for similar reasons in the context of Arias' claim that these instructions violated his Fourteenth Amendment right to Due Process. On the score, the Supreme Court has cabined our review of the constitutionality of jury instructions, stating:

> The only question for us [on habeas review] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); see also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'"). It is well

established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. <u>Cupp v. Naughten, supra</u>, 414 U.S., at 147, 94 S.Ct., at 400–01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. <u>Boyde v. California</u>, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." <u>Dowling v. United States</u>, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." <u>Ibid.</u>

<u>Estelle v. McGuire</u>, 502 U.S. 62, 71–73, 112 S. Ct. 475, 481–82, 116 L. Ed. 2d 385 (1991). Since we find the instructions, as a whole, did not prejudice the petitioner such that the outcome of the trial would have been different, his challenge of the jury instructions under due process also fails.[9]

Finally, in his petition, Arias raises a due process argument that the state court addressed on direct appeal, that the trial court erred in allowing medical examiner, Dr. Ross, to testify about the location of the shooter when the second shot was fired because it was outside the scope of his expertise. The petition argues that this type

---

[9] The related arguments regarding the unanimity of the verdict due to jurors' interpretations of the instructions and the alleged prejudice caused by the "vital interest" instruction also fail, where the petitioner does not argue these instructions were erroneous or contrary to law, in fact, they were the standard jury instructions, but rather argues that they were confusing and not tailored to the facts of the case. However, considered as a whole, and where there was evidence in the record from which the jury could draw its conclusions, we do not find that it is likely the jury applied the instructions in a way that violates the Constitution.

of testimony requires an expert in ballistics. Arias does not provide additional

support for this ground in his memorandum, and the state court addressed the issue

on appeal, stating:

> Contrary to Arias's assertion otherwise, we have long held that "[a] physician who examines the gunshot wounds suffered by a decedent may give his opinion regarding the direction and distance from which such wounds were inflicted though that physician is not qualified as a ballistics expert." Commonwealth v. Guess, 416 A.2d 1094, 1096 (Pa. Super. 1979) (citing Commonwealth v. Gonzales, 345 A.2d 691 (Pa. 1975)). Here, Dr. Ross was an expert in forensic pathology who conducted the autopsy of the victim. We therefore find the opinion offered by Dr. Ross regarding the direction from which the second shot was fired was within his area of expertise. See, e.g., Commonwealth v. Mollett, 5 A.3d 291, 305 (Pa. Super. 2010) (finding it was within former medical examiner's area of expertise to testify to position of decedent prior to being shot). Accordingly, the admission of this testimony was not in error.

(Doc. 8-1, at 312-13).

The state court noted that Arias cited no case law in support of his proposition

that Dr. Ross was unqualified to offer such an opinion. Similarly here, although this

issue is raised as a ground in Arias' petition, he has failed to develop this argument

in his memorandum or cite any caselaw demonstrating the state court's

determination on this issue was "contrary to" or involved an unreasonable

application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or "based

upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2).

Indeed, it is well settled in Pennsylvania that such testimony by a medical examiner

60

is proper. It also appears medical examiner testimony about the location of the shooter based on an examination of the victim is also common, unremarkable, and permissible in our circuit. See e.g. Edwards v. Superintendent Forest SCI, 845 F. App'x 148, 152 (3d Cir. 2021) (Medical examiner determined that the shots were fired from at least three feet away); Preston v. Superintendent Graterford SCI, 902 F.3d 365, 370 (3d Cir. 2018) (Medical examiner testified that the trajectory of the bullet was consistent with a shooter standing on the victim's left side and that the victim's facial injuries indicated that he had fallen flat on his face after being shot); Dellavecchia v. Sec'y Pennsylvania Dep't of Corr., 819 F.3d 682, 696 (3d Cir. 2016) (Medical examiner testified that the location of the gunshot indicated that the victim was shot with his back to his shooter and that the lack of soot or stippling on the victim's body indicates that the shots were fired from more than three feet away); Collins v. Sec'y of Pennsylvania Dep't of Corr., 742 F.3d 528, 548 (3d Cir. 2014) (Testimony of medical examiner demonstrating the location of the shooter based upon the gunshot wound patterns would not have been refuted by a ballistics expert). Given the undisputed view of both state and federal courts that a medical examiner may give his opinion regarding the direction and distance from which gunshot wounds were inflicted, it cannot be said that this testimony violated Arias' right to due process at trial and this claim fails.

In sum, we are mindful that the Supreme Court has observed that a "doubly deferential judicial review . . . applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see also Yarborough v. Gentry</u>, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). Given this deferential standard, and in consideration of the great weight of evidence supporting its conclusions, we cannot conclude that the state courts' decisions relating to these ineffective assistance of counsel claims were an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. To the contrary, the state courts' analyses of the petitioner's constitutional claims are thorough and well-supported by both the law and the facts of his case. Further, Arias has not met the rigorous standards to demonstrate that he was deprived of the process due to him at trial and all claims not presented in state court are unexhausted, procedurally defaulted, and without merit. Therefore, these claims do not warrant habeas relief.

Finally, we have carefully considered whether Arias is entitled to a certificate of appealability under 28 U.S.C. § 2253. As the Supreme Court observed "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529

U.S. 473, 484, (2000). Here, we conclude that Arias can make no such showing in light of the state court findings, clear evidence of his factual guilt, and the fact that the bulk of his claims are unexhausted or procedurally defaulted. Simply put, we believe that no reasonable jurist could now find that the state courts misapplied the law in finding that Arias committed this murder, considering the weight of circumstantial evidence in this case. Accordingly, a certificate of appealability will not issue in this case.

## IV. <u>Conclusion</u>

Accordingly, for the foregoing reasons, we conclude that the Petition for Writ of Habeas Corpus should be DENIED and that a certificate of appealability should not issue. An appropriate order follows.

Submitted this 25th day of July 2024.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
